# Chesapeake & Ohio Railway Company, et al. v. Vanhoose.

(Decided March 20, 1925.)

## Appeal from Pike Circuit Court.

1. Exceptions, Bill of—Presiding Judge Disqualified to Try Case May Certify Undisputed Bill of Exceptions.—In view of 1920 amendment (Laws 1920, c. 118) to Civil Code of Practice, section 334, where there is no dispute as to correctness of bill of exceptions as presented, presiding judge of court, though disqualified to try case, may approve and certify same.

2. Appeal and Error—Party Cannot on Appeal Raise Disqualification of His Other Counsel as Judge to Certify Bill.—Where one of plaintiff's counsel having qualified as judge was disqualified to try case, but did at following term, approve and certify bill of exceptions, assuming he was disqualified to do so, bill will not be stricken out, since that would permit plaintiff through one counsel to take advantage of error committed below by other.

3. Master and Servant—Conductor Held to have Assumed Risk in Stepping on Wet Incline.—Freight conductor, basing action on negligence in not furnishing reasonably safe place in which to switch and check cars, held to have assumed risk where accident resulted from foot slipping, in attempt to step down incline, which he knew to be muddy and where he was master in manner of performance of duties.

4. Master and Servant—Conductor Held to have Assumed Risk in Checking and Switching.—Freight conductor, who attempted to perform duties of switching and checking on other side of switch track for own convenience, since it was not so wet and muddy, held to have assumed the risk as incident to manner in which he attempted performance of duties.

5. Master and Servant—Conductor Held Not Relieved from Assumption of Risk by Order of Superior.—Contention of freight conductor, in action based on negligence in not furnishing reasonably safe place to switch and check cars, that he was relieved from assumption of risk in choosing particular manner of performance of those duties, by fact that he was acting under direct orders of train master to do work at unsafe place rather than go on to safe place, held untenable.

WORTHINGTON, BROWNING & REED and KIRK, KIRK & WELLS for appellants.

ROSCOE VANOVER for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an appeal by the defendants, C. & O. Railway Company and its trainmaster, W. A. Mordica, from

a judgment for $12,500.00 rendered against them in favor of the plaintiff, Vanhoose, a freight conductor, for the loss of a leg.

Hon. J. E. Childers, one of the plaintiff's attorneys, having been elected and qualified as judge of the district before the case came on for trial, was disqualified to try it, and it was tried by a special judge appointed for the purpose by the Governor. The special judge overruled defendants' motion for a new trial, and gave them until a fixed day in the next regular term of the court to prepare and present their bill of exceptions. The bill was prepared and presented within the time allowed, and the special judge not being present, same was approved and certified by Judge Childers, the regular judge, over the objection and exception of plaintiff.

Claiming that Judge Childers, because of his disqualification to try the case, was without authority to approve and certify the bill of exceptions, plaintiff has moved to strike same from the record, and in support of his motion cites several cases decided before the amendment of section 334 of the Civil Code, in 1920, and holding that the bill must be certified by the judge who presided at the trial.

It is clear that, except for the amendment thereof, that section and these cases would be conclusive and sustain appellee's contention. The amendment, however, radically changes the provision for certification of the bill of exceptions, and reads:

"If the judge of said court shall die or resign, or his term of office shall expire before the term of court to which time is given to file bill of exceptions, or if the regular judge of the court, or any special judge who shall have tried the case, does not preside at the said next term of court, then it shall be the duty of the regular judge of said court, if present and presiding, or any special judge who may be presiding at said term of court, to sign said bill of exceptions, and attest the transcript of testimony taken by the official stenographic reporter, and make all necessary orders with reference thereto."

While the letter of this enactment makes it the duty of the judge presiding at the term when the bill is due to certify same, although he did not preside at the trial and, therefore, has no personal knowledge of what trans-

pired, it was not the intention, of course, to make that duty absolute when the verity of the bill was disputed. The act then, by necessary implication, confers upon him the power to hear and determine any dispute that may arise with reference thereto. As a consequence, its approval in such circumstances is a judicial act, such as counsel for either of the parties would be disqualified to perform. But where, as here, there was and is no dispute as to the correctness of the bill as presented, its approval and certification become merely formal and clerical. Under such circumstances there is no apparent reason why the presiding judge of the court, even though disqualified to try the case, should not approve and certify the bill, and this, we think, the legislature intended he should do.

But even if this be not true, still the bill should not be stricken in this case, since to do so would permit appellee, through one of his counsel, to take advantage upon appeal of an error, not merely consented to but actually committed below by his other counsel, if, as matter of fact at the time both were representing him, and there is nothing in this record to show that this is not true.

If, however, Judge Childers was no longer employed in the case, his former connection therewith was, in our judgment, wholly insufficient to disqualify him from approving and certifying a bill of exceptions, the verity of which had not been attacked.

Hence, there is no merit in this contention, in whatever light it is viewed, and the motion to strike the bill is overruled.

The negligence alleged is the failure to furnish plaintiff a reasonably safe place in which to switch and check the cars in his train. The train was made up at Elkhorn City, and ordinarily switching and checking were performed by appellee, or the train crew under his direction, in the company's yards at that place. Upon this occasion, however, these yards were congested and a passenger train was about due, because of which facts Mr. Mordica directed plaintiff to take his train across the river to a passing track, and there do his switching and checking. It had been raining for several days, and plaintiff asked permission to take the train to Shelby City, a distance of 15 miles, and do the checking and switching in the yards there. Mr. Mordica declined to accede to this request, and directed plaintiff to do the work at the passing track across the river from Elkhorn

City, and plaintiff proceeded to comply with this direction.

At that place, in addition to the main line and passing track, there is a switch track leading from the passing track to a nearby mine, and plaintiff thus relates what he was doing at the time of the accident, and how it occurred:

"Well, all cars for Paintsville or Russell had to be gotten together in line and when we took it across the river to shift it and get it in line, I first checked on the main line, and I had finished it, and then I walked or waded over to the end of the cars on the other track and I went down through that mud and water back down to the switch and across on the mine track back of the passing track and had only checked four cars when I came to one car and the numbers were not plain, they were very dim, and I had a small lantern on my arm, and I started down that slope between the mine track and the passing track to look at the number, when all at once my foot slipped and my leg went in under the car wheel, and I throwed the other leg out from it."

He further testified that it was between 11 and 12 o'clock at night; that the night was dark; that the main and passing tracks, as well as the ground between, were covered with mud and water about knee-deep, and that the mine track was higher and not so covered; that ordinarily he would have done all the checking from between the main and passing tracks, but because of the water and mud there, he crossed over the passing track, after checking the cars on the main track, and walked along the main track because it was much drier, in order to check the cars on the passing track. He was then questioned and answered as follows:

"Q. When you got to the end of the cars, you could have checked back down, couldn't you? A. Yes, sir, but I did not want to wade that water. Q. You could have come back, though? A. Yes, sir. Q. You crossed over on account of the convenience? A. Yes, sir, on account of the condition there. Q. You had a lantern on that occasion? A. Yes, sir, but it was very dim. Q. It was the regular railroad lantern? A. Yes, sir. Q. If you could have seen the numbers on the cars, couldn't you have seen where to go with that lantern? A. I was taking the num-

bers of the cars. Q. Couldn't you have seen it, that is, where you were going there? A. Well, if I had taken the lantern off my arm I might have seen plainer, but I had to check and carry my pencil and book along with me. Q. You did not take it off your arm when you started down that bank? No, sir. Q. Now, if you had held it down in the usual way, you could have discovered the condition that existed there and the mud and water? A. Yes, sir, that was all there, and I kind'a flashed my lantern down, but did not take it off my arm.''

It will, therefore, be seen that according to plaintiff's own evidence the accident resulted from his foot slipping as he attempted to step down from the mine track to the lower passing track, when he knew that the place where he placed his foot in so doing was on an incline that was wet and muddy. That he knew the conditions under which he attempted to perform this act as well as, or better than, his employer and his superior, the trainmaster, is made perfectly clear, as is also the fact that he was in full charge of the operation and master of the manner in which it should be performed.

It necessarily results, therefore, that the accident resulted from the manner in which plaintiff elected to perform the work, rather than because of the place at which he was directed to perform it. He, himself, admits that his duties could have been performed from the other side of the passing track, and that the accident occurred because of the fact that for his own convenience he attempted to perform these duties from the other side of the passing track, where it was not so wet and muddy. This being true, he necessarily assumed any risk incident to the particular manner in which he was attempting to perform his duties.

It is insisted, however, by his counsel, that he was relieved from this assumption of risk because of the fact that he was working under the direct orders of his superior to do the work at this, an unsafe place, rather than at the Shelby yards, a much safer place in which to have performed the work. This contention, however, is too plainly without merit to require a discussion of the many cases cited in briefs with reference to when a servant, working under the direct orders of a superior, does not assume the risk of dangers incident to an obedience to his superior's commands.

In all of those cases the servant's obedience of his superior's commands left him no choice by which he might have avoided the danger from which the accident resulted, except by refusing to obey the order, whereas, as we have seen, in this case the trainmaster simply directed the plaintiff to do the switching at a particular siding, leaving him free to do it at that place in whatever manner he might choose to do it, and that he chose both the manner and the particular spot for doing the act which caused the accident, not as a necessary result of his superior's commands, but for his own convenience and comfort.

It, therefore, seems clear to us that the doctrine and cases relied upon by plaintiff are wholly inapplicable to the facts of this case as detailed by him and his witnesses, and the court erred in refusing to direct a verdict for the defendants.

Wherefore, the judgment is reversed, and the cause remanded for proceedings not inconsistent herewith.